979 F.Supp. 1264 (1997)
Daniel J. SIMPSON, Plaintiff,
v.
John J. CALLAHAN,[1] Acting Commissioner of Social Security, Defendant.
No. 2:96 CV 23 DDN.
United States District Court, E.D. Missouri, Northern Division.
September 29, 1997.
*1265 Robert L. Mark, Hannibal, MO, for Plaintiff.
Henry J. Fredericks, St. Louis, MO, for Defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This judicial action is before the Court upon the cross motions of the parties for summary judgment, under Federal Rule of Civil Procedure 56. The parties have consented to the exercise of authority by a United States Magistrate Judge under 28 U.S.C. § 636(c).
Plaintiff Daniel J. Simpson filed two applications for benefits under the Social Security Act, for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. § 1381, et seq. Plaintiff alleged he was disabled on October 5, 1992, on account of back and leg problems, groin strain, and right posterior hip contusion. (Tr. 105, 155). Plaintiff's applications were denied initially and on reconsideration.
An evidentiary hearing was held before an Administrative Law Judge on March 18, 1994. In that hearing, plaintiff was represented by counsel. (Tr. 32). A supplemental evidentiary hearing was held on August 9, 1994. (Tr. 74-104). On December 30, 1994, the ALJ found that plaintiff was not disabled under the Social Security Act (Tr. 14-23). Specifically, the ALJ found that plaintiff is fully insured for disability insurance benefits through the date of the ALJ's decision; plaintiff has not worked at substantial gainful employment since October 5, 1992;[2] that *1266 plaintiff suffers from chronic lumbar strain, minor degenerative changes with a disc protrusion but no evidence of nerve root compression; that he does not have an impairment or combination of impairments found in, or medically equal to, one in the Commissioner's list of disabling impairments; that any bowel problem or adjustment disorder from which plaintiff may suffer is not severe and does not significantly limit plaintiff; plaintiff's subjective complaints were not fully credible; plaintiff has the residual functional capacity for some medium work, except for occasional lifting of more than 50 pounds or frequent carrying of more than 10 pounds and with other limitations;[3] plaintiff is unable to perform his past relevant work as a machine shop manager and machine maintenance worker; plaintiff is 42 years of age (a younger individual); he has an 11th grade education (limited); plaintiff has acquired work skills that can be applied to skilled or semiskilled work; and that plaintiff can perform the positions of inspector, machine operator, assembler, tenderer, checker and tester, which exist in significant numbers in Missouri and in the national economy. (Tr. 22-23).
The Commissioner's decision is conclusive upon this Court, if it is supported by relevant evidence a reasonable person might accept as adequate to support the decision, i.e., "substantial evidence." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). To be disabled under the Act, plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to end in death or which has lasted or can be expected to last for not less than twelve months. 42 U.S.C. § 1383(c)(3); Russell v. Secretary of HEW, 402 F.Supp. 613, 618 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir. 1976). In this case the ALJ found that plaintiff cannot perform his past relevant work. Therefore, the burden of proof shifted to the Commissioner to prove that plaintiff has the residual functional capacity to perform substantial gainful activity. Clark v. Shalala, 28 F.3d 828, 830 (8th Cir.1994).
In reviewing the record for substantial evidence, the Court may not make its own findings of fact by reweighing the evidence and substituting its own judgment for that of the Commissioner. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987). In determining whether the record contains substantial evidence vel non the Court must do more than search for substantial evidence that supports the Commissioner's decision. The Court must also consider whatever in the record detracts from the weight of the evidence which supports the denial of benefits. Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir.1987). See also Clarke v. Bowen, 843 F.2d 271, 272 (8th Cir.1988). A reviewing court should affirm a decision that is supported by substantial evidence. Baker v. Secretary, 955 F.2d 552, 554 (8th Cir.1992).
In this case, the plaintiff first argues that the ALJ denied plaintiff due process of law by not allowing him to cross-examine the author of a post-hearing consultative examination. During the supplemental hearing on August 9, 1994, the ALJ listened to the testimony of Dr. Simon Horenstein, a medical expert specializing in neurology. The ALJ had sent him the medical records of plaintiff for review. After reviewing that record, Dr. Horenstein testified that he could not render a diagnosis of plaintiff's condition, because the documents did not sufficiently evidence a disease, only complaints of pain. Dr. Horenstein observed in the records an abnormal protrusion of the intervertebral disks at L-4 and L-5, which resulted in a variation in the sensation of the entire right foot. This abnormality also involved the right lower leg, which might indicate a problem in the third or second lumbar root. Dr. Horenstein testified that the disc protrusion could cause pain, if it compresses a nerve root or is related to spinal instability. (Tr. 81-87).
Dr. Horenstein testified further that nerve root compression would be indicated by a restriction in straight leg raising at 15 degrees. *1267 He had observed that the studies of plaintiff performed by Dr. Arun Lakhanpal indicated that plaintiff's leg was not functioning in a normal manner. This, however, was not consistent with a disk protrusion lateralizing to the left side, which plaintiff had; to be consistent, the pain would be on the left side. Consequently, Dr. Horenstein believed that plaintiff could be suffering from an emotional condition, as had some of the other medical practitioners who dealt with plaintiff believed. (Tr. 87-89). For this reason, he agreed with the ALJ that a psychological or psychiatric evaluation of plaintiff would be useful. (Tr. 97).
At the conclusion of the supplemental hearing the ALJ agreed to the request of plaintiff's counsel for the time to get the results of the proceeding today.
ALJ: Okay. You want two weeks 
ATTY: Yeah.
ALJ:  and if you need more time than that, let us know and we'll work with you on it and then I'll make a determination after I get that evidence as to whether or not I should develop the record further with anything else. As far as you know, he's not receiving any psychiatric or psychological treatment, is he?
ATTY: No.
ALJ: Okay. We can close the hearing today and the record is open for 14 days.
(Tr. 98-99).
Thereafter, on October 31, 1994, at the request of the ALJ, plaintiff was evaluated by licensed psychologist Jerry Aamoth. Because plaintiff "became uncomfortable" after about 2½ hours of the psychological testing, plaintiff asked whether he could complete the testing on another day; the psychologist agreed. (Tr. 308). The results of the evaluation were:
Dan is showing the effects of a prolonged period of inactivity and non-productivity in the face of what has been a very hard working life. While trying not to complain, it is evident that he is much more worried than he lets on and although he retains a sense of optimism that he can return to work, he nevertheless cannot help being depressed and anxious at the present time about his physical situation and the pain that is present. Diagnostic impressions are:
Axis I (309.28) Adjustment disorder with mixed anxiety and depressed mood.
Axis II (V7109) No diagnosis.
Axis III Residuals of injury.
Axis IV Current stressors: 4, severe, finances, health, and no work.
Axis V Current GAF 60.
SUMMARY AND RECOMMENDATIONS
This is a serious and likeable man who is struggling to adjust to current physical limitations. He is experiencing some decline in his concentration and perseverance because of his injury and he is hoping that he can get help for the foreseeable future until he can hopefully rehabilitate himself. For all practical purposes, he is generally functioning in the normal range of intelligence and personality with the exception of the emotional stresses that are [present which appear mainly secondary to his injury]. This has impaired his concentration to a point where it would be difficult for Dan to maintain a full day's work with his current level of pain. He is quite good with his hands and demonstrates high motivation.
(Tr. 311). Plaintiff shows from the record that this report was received by the Social Security Administration Office of Hearings and Appeals on November 21, 1994, and was sent by the ALJ to plaintiff's counsel on December 16, 1994. Plaintiff argues that it was misaddressed. The transmittal letter from the ALJ allows plaintiff ten days from the date of the letter (December 16, 1994) in which to submit written comments on the psychologist's report or addition evidence. The ALJ stated further:
If I have not heard from you within the ten-day period, I will assume that you have no comments or statement to make and that you have no further evidence to submit. The case will still receive the same careful consideration. A decision will be issued based on the additional evidence and other evidence of record.
*1268 (Tr. 317-18). Although the ALJ's letter was sent to the wrong address, coincidentally plaintiff's counsel sent the ALJ a letter dated December 19, 1994, requesting a copy of the psychological report. (Tr. 319). This letter was received by the Office of Hearings and Appeals on December 21, 1994. On December 28, 1994, the ALJ's letter was remailed by the Office of Hearings and Appeals to plaintiff's counsel at the correct address and was received by him on December 29, 1994. (Tr. 376). On December 30, 1994, the unfavorable decision by the ALJ was issued.
The Court agrees with plaintiff that he was deprived of any meaningful opportunity to comment on the October 31, 1994, report of the psychologist. Shortly after December 19, 1994, the ALJ knew or should have known that plaintiff's counsel did not receive a copy of the psychologist's report within a reasonable time after it was mailed the first time. When the report was remailed on December 28, 1994 (and marked "remailed December 28, 1994"), the only reasonable interpretation of the letter can be that the ten day period for comment and the submission of additional evidence would run from December 28, 1994. Therefore, it was a violation of due process of law for the ALJ to issue an unfavorable decision on December 30 in contradiction to his letter remailed December 28, without plaintiff having had a reasonable opportunity to respond to the report. Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Demenech v. Secretary, 913 F.2d 882, 884 (11th Cir.1990). In the chronological development of this issue, plaintiff had no meaningful opportunity to request and to undertake a review and examination of the psychologist's opinions. Chamberlain v. Shalala, 47 F.3d 1489, 1496 (8th Cir.1995); Coffin v. Sullivan, 895 F.2d 1206, 1212 (8th Cir.1990).
Defendant argues that plaintiff is entitled to no relief because the ALJ relied upon the record as a whole which, exclusive of the psychologist's post-hearing report, was sufficient to provide substantial evidence to support the denial of benefits. This argument is without merit.
The ALJ's finding that plaintiff is not disabled pivots upon his finding that the subjective complaints of plaintiff about disabling pain "were not fully credible." (Tr. 22). The purpose of the post-hearing psychological consultation was to investigate whether plaintiff actually suffered from a psychological condition that would result in him experiencing pain in the absence of a physical condition causally related to such pain. In his decision, the ALJ discredited the opinions in the report which supported plaintiff's contentions, of course, without the benefit of plaintiff's comments on the report. With or without the violation of due process described above, the ALJ's consideration of the psychological report of Dr. Aamoth requires that this action must be recommitted to the Commissioner for rehearing.
The ALJ made inconsistent findings based upon Mr. Aamoth's psychological report. The ALJ determined first that the psychological test results indicated abnormal psychological manifestations:
some elevation in regard to histrionic, depression, and hysterical scales representing preoccupation with his physical state and depression and physical manifestation of emotional discomfort. These tests further supported the contention that the claimant was anxious and depressed in regard to his current physical problems and worried about not working and financially supporting his family.
(Tr. 17). Next, the ALJ stated, "The claimant did demonstrate pain behavior as reported, the exam being conducted on two different meetings due to the claimant's complaints of pain." (Id.). Then, the ALJ noted that Dr. Aamoth credited plaintiff's complaint of pain and determined that plaintiff had only a fair ability to deal with work stress and a fair to poor ability to maintain attention and concentration. The ALJ discredited these opinions of the psychologist, because he was not qualified to determine whether or not plaintiff had a physical condition "causing such pain as alleged." (Tr. 17-18). The Court has carefully studied the psychologist's post-hearing report and finds no opinion therein that plaintiff's physical condition was medically sufficient to cause or actually caused the pain alleged by plaintiff. Rather, the psychologist opined that he believed that plaintiff actually experienced *1269 pain sensation, whether or not caused by a physical condition or a psychological condition. Such an opinion has not been shown to be outside the expertise of the psychological consultant. Further, without invoking any basis in the record, the ALJ discredited the psychologist's "findings in regard to limited ability to deal with stress and significant reduction in concentration, in fact, [the ALJ] finding the claimant has no severe functional limitation in regard to an adjustment disorder." (Tr. 18). It is within the decisional authority of the ALJ to discredit an expert's opinion; it is entirely outside the ALJ's competency to render a psychological opinion that a claimant suffers from "no severe functional limitation in regard to an adjustment disorder." Newman v. Director, 745 F.2d 1162, 1165 (8th Cir.1984).
Without the benefit of a psychological evaluation, the ALJ submitted a hypothetical question to the vocational expert at the first hearing. In this question he asked whether plaintiff was employable, if his allegations of pain were true. To this question, the vocational expert answered in the negative. (Tr. 66). Thus, as stated above, the determination of whether plaintiff's complaints of disabling pain are credible are of great importance to the outcome of his claim for disability benefits. This Court is of the opinion that this case must be remanded to the Commissioner for further investigation of plaintiff's psychological condition and, if necessary, a reconsideration by a vocational expert of hypothetical questioning fully informed with the results of this psychological investigation. In this investigation, plaintiff shall have an adequate opportunity to comment upon, whether in support of or in contradiction to, the generated opinions.
For these reasons, the motion of plaintiff for summary judgment is sustained, in that the action will be remanded to the Commissioner for further proceedings. The motion of the defendant for summary judgment is denied.
NOTES
[1] Effective March 1, 1997, John J. Callahan was appointed to serve as Acting Commissioner of Social Security. Therefore, he is substituted for Shirley S. Chater as defendant in this action. Fed.R.Civ.P. 25(d)(1).
[2] On that date plaintiff was seriously injured at work working with heavy machinery. Before that date he had had no serious physical limitation. (Tr. 43-43).
[3] Those limitations are that plaintiff should not climb ladders or scaffolding and should only occasionally climb stairs and ramps and should avoid exposure to body vibration. (Tr. 22).