**Mary BRUET, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 2:02–CV–541–FTM–DNF.**

United States District Court, M.D. Florida, Ft. Myers Division.

March 31, 2004.

---

**1340**

John R. Hurley, John R. Hurley, P.A., Naples, FL, Carol Ann Avard, Douglas D. Mohney, Avard Law Offices, P.A., Cape Coral, FL, for Plaintiff.

Susan R. Waldron, Tampa, FL, Mary Ann Sloan, Dennis R. Williams, Atlanta, GA, for Defendant.

### ORDER [1]

FRAZIER, United States Magistrate Judge.

The Plaintiff seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) denying her claim for Social Security disability benefits. For the reasons set out herein, the decision is **REVERSED and REMANDED for an AWARD OF BENEFITS** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

### I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505–404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

On December 16, 1998, Plaintiff filed an application for disability insurance benefits (DIB), asserting a disability onset date of December 1, 1996. (Tr. 79–81). Her claim was denied initially and upon reconsideration, after which she filed a request

---

**1.** Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Referenced dated March 11, 2003.

for hearing before an administrative law judge. (Tr. 61.66). The hearing was held before Administrative Law Judge William J. Kogan (ALJ) on March 23, 2000. (Tr. 31–60). ALJ Kogan denied the claim on August 17, 2000 (T. 12–20); and plaintiff filed a request for review of the hearing decision on August 22, 2000 (T. 8). The Appeals Council denied the request, ruling that "the Administrative Law Judge's decision stands as the final decision of the Commissioner" on the claim. (T. 4–5). *Falge v. Apfel,* 150 F.3d 1320, 1322 (11th Cir.1998) (*cert. denied,* 525 U.S. 1124, 119 S.Ct. 907, 142 L.Ed.2d 905). Plaintiff timely sought review of this decision by the United States District Court on October 31, 2002. (Doc. 1). The parties agree that the case is ripe for review.

The ALJ determined that Plaintiff met the disability insured status requirements at the time of her alleged onset date of December 1, 1996 and she remained insured through December 31, 2001. (Tr. 19). At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 1996. (Tr. 12, 19). At Steps 2 and 3, the ALJ found Plaintiff suffered fibrositis (fibromyalgia) an impairment which is severe but which does not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19)[2]. The ALJ found plaintiff's statements concerning her impairment and its impact on her ability to do work not entirely credible. (Tr. 19). At Step 4, the ALJ determined Plaintiff was able to perform the full range of sedentary work[3] and, thus, able to perform

her past relevant work as a receptionist. (Tr. 17, 19). Accordingly, the ALJ concluded that Plaintiff was not disabled and did not proceed to Step 5 of the sequential evaluation. (Tr. 20).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir.1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995), *citing Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982) and *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence

---

**2.** It should be noted that the ALJ found plaintiff's depression is not a severe impairment. The plaintiff did not allege an inability to work due to depression, but specifically alleged an inability to work due to fibromyalgia. (Tr. 12).

**3.** Sedentary work activity requires lifting no more than 10 pounds at a time and sitting for approximately 6 hours in an 8 hour day and standing or walking no more than 2 hours in an 8 hour workday 20 C.F.R. § 416.967(a) SSR 83–10.

favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord, Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts:

Plaintiff was born on October 24, 1942, and was 57 years old at the time of the Commissioner's decision. (Tr. 34). Plaintiff has a high school education and past relevant work as a hospital clerk, receptionist in a dental office and as a library clerk.[4] (Tr. 35, 98, 103).

Plaintiff alleged that she has been unable to work since December 1, 1996, due to fibromyalgia and chronic fatigue syndrome. (Tr. 79, 97). Plaintiff's treatment history finds that her medical problems began with a severe flu-like illness in 1994, that went on to develop as "prolonged fatigue as well as stiffness and diffuse achiness." (Tr. 149). Six months later on December 13, 1994, plaintiff was still experiencing extreme fatigue. (Tr. 241). Plaintiff completed her Disability Report by citing fibromyalgia as the condition that prevents her from working. Plaintiff's complaints were "prolonged fatigue, sleep disturbance, pain, muscle spasm and weakness, stiffness, leg cramps, confusion and trouble concentrating...also, poor memory." (Tr. 97). On the M–44p form plaintiff expanded on the nature of her pain: "pain can be knife-like to all over muscle cramps in the neck, shoulders, elbows, knees and hips. Feet can have intense pain like hot pins and needles [that are] at times very severe. [The] pain can be very severe." (Tr. 114). Plaintiff described the activities that cause her pain: "Standing, walking, sitting, reaching, lying down, [and] temperature change. If I walk too long, stand too long or sit too long, I have to change positions may times due to the pain." (Tr. 114). On her Reconsideration Disability Report she reported: "I have to lay down every day to rest due to the fatigue and pain. [I] don't feel good most of the time....My ability to think and concentrate has gotten worse. I need to write things down to remember anything." (Tr. 128).

Plaintiff testified at the hearing: "I feel like I have the flu, a very bad case of the flu. I'm extremely achy. The fatigue is very bad. I have trouble with memory. I have an irritable bowel that just can come on at any time. It just flares up. The spasms, at any time anywhere.... I have a burning in my feet and hands. It feels like 1, 000 fire ants biting you at one time." (Tr. 44). Plaintiff complains of lack of sleep, feeling tired and needing rest all the time. (Tr. 45–46).

Plaintiff's memorandum of law (Doc. 19) advises the court that while counsel was preparing the memorandum it was discovered that the medical records of a Dr. J. Diaz could not be found in the transcript.[5]

---

4. Plaintiff left her job with Naples Community Hospital on January 16, 1996, due to an inability to perform a very fast paced and strenuous job. She made an attempt to find lighter employment and worked part-time in a library for a short period of time.

5. Plaintiff was represented by other counsel through the Appeals Council denial (Tr. 8), present counsel requested an extension of time to obtain the records of John Diaz, M.D. After several attempts of looking for the files in storage, etc., the physician's office concluded they must have been destroyed. Other

It appears that Dr. J. Diaz treated the plaintiff between March 17, 1995 and October 25, 1996. Dr. George W. Ferguson, plaintiff's family practitioner, reported that Dr. Diaz had ordered the Epstein–Barr titer test that confirmed a diagnosis of CFS. (Tr. 242). That lab test ordered by Dr. Diaz on June 7, 1995, is included in Dr. Ferguson's records (Tr. 253) but none of Dr. Diaz' treatment notes are found in the file. In addition, on a "Progressive Disciplinary Counseling Record" from Naples Community Hospital, dealing with the issue of excessive absences due to her medical condition, plaintiff stated she was "being treated by Dr. Diaz for the Epstein–Barr Virus, CMV virus, and chronic fatigue syndrome" as the reasons for those absences. (Tr. 91).

Dr. George W. Ferguson, M.D., began treating plaintiff on or about October 16, 1992, through March 14, 2000. In reviewing the medical records, it appears that plaintiff complained of weakness and fatigue as early as July 19, 1994. (Tr. 260). At almost every visit, plaintiff complained of fatigue, difficulty working and being unable to sleep. On December 12, 1997, Dr. Ferguson's notes reflect the following: "We discussed the evaluation and work-up of chronic fatigue including the rheumatological aspects and infectious disease aspects and psychological aspects. I have asked [her] to see Dr. Gridley to exclude the rheumatological aspects and proceed from there." (Tr. 261).

On January 2, 1998, Dr. John H. Gridley, Jr., a rheumatologist,[6] evaluated the plaintiff. Dr. Gridley diagnosed fibromyalgia and stated: "Because of the chronic fatigue that is associated with this condition, she has difficulty in performing work functions, both in and out of the home. This makes it virtually impossible for her to hold down a working position for eight hours a day." .... "other medical problems such as gastrointestinal illnesses, urinary tract infections and pulmonary complaints can cause exacerbation in her myofascial pain syndrome. This then results in increased pain and decreased energy levels. Hopefully with modification of her sleep cycle and through the use of medications, clinical improvement will occur. Until then, it is my professional opinion that she is unable to participate in gainful employment due to her active myofascial syndrome and fibromyalgia." (Tr. 132).

A review of the decision finds that the ALJ specifically rejected Dr. Gridley's "medical assessment of ability to do work-related activities (physical)" that he completed on March 15, 2000 (Tr. 17–18), where he indicated that the plaintiff did not have the capacity to meet the strength demands of sedentary work. Dr. Gridley stated that she can lift up to 5 pounds and she can sit for only 20 minutes without changing position. Sedentary work require a claimant to lift up to 10 pounds and be able to sit for 6 hours in an 8–hour day. SSR 83–10. Dr. Gridley's medical findings that support this assessment were the: multiple fibromyalgia tender points." (Tr. 254–256).

physicians have utilized material facts from Dr. Diaz' records so there is evidence to assess the claim in this case.

**6.** Dr. John Gridley was deposed on February 17, 1999, [to support plaintiff's claim that she was no longer able to work and was entitled to an increase in alimony]. At the deposition, Dr. Gridley stated that he is board certified in emergency medicine, internal medicine and rheumatology, completing a two year fellowship [in rheumatology] at Boston University in Boston City Hospital. (Tr. 198)

## B. Specific Issues

On appeal, Plaintiff essentially raises three issues. First, Plaintiff contends that the ALJ rejected the opinions of plaintiff's treating physicians without giving sufficient cause. Second, The ALJ's assessment of plaintiff's residual functional capacity is not supported by substantial evidence. Third, she asserts that the ALJ's finding that plaintiff is not disabled because she can return to her past relevant work as a receptionist did not apply the correct legal standard and is not supported by substantial evidence.

### 1. The ALJ's Assessment of Plaintiff's Residual Functional Capacity Is Not Supported By Substantial Evidence

The medical evidence establishes the plaintiff is affected by the presence of fibromyalgia and chronic fatigue syndrome. While these impairments are considered severe, the ALJ did not find that any of the plaintiff's treating or examining physicians' mentioned any findings equivalent in severity to the criteria of any listed impairment as described in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1). (Tr. 14).

The ALJ considered the opinion of the state agency medical consultant who evaluated this issue at the initial and reconsideration level of the administrative review process and reached the same conclusion. (Tr. 18, 153–157). The ALJ found that the consultative physical examination by Dr. Alfonso Olivos, M.D., showed "claimant was in no acute distress or shortness of breath, and the claimant was able to walk by herself, without an assistive device. The claimant was able to bend her knees and able to get on and off the examining

table." Dr. Olivos noted plaintiff had "no spasticity of the paravertebral muscles on the cervical and lumbar spines. He noted some tenderness along the paravertebral muscles on claimant's cervical and lumbar spines, and claimant's joints showed no evidence of inflammation." (Exh. 2F/4). Consequently, the ALJ determined that plaintiff was able to perform her past relevant work and denied her claim for disability. (Tr. 2). However, further looking at Dr. Olivos' notes, they reveal that he wrote under *Clinical Conclusions:* "1—She has been with history of chronic, pains, on the neck, shoulders, wrists, hips, knees, and feet, probably due to *fibromyalgia*". (Tr. 157).

■ The Eleventh Circuit holds that the ALJ must consider the combined effect of all impairments when evaluating Plaintiff's disability. *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987). When plaintiff has more than one medically determinable impairment, the combined effect of those impairments must be considered throughout the disability determination process. 20 C.F.R. §§ 404.15223 and 416.923. The ALJ is required to consider the combination of impairments even when the impairments separately are not severe. *Hudson v. Heckler,* 755 F.2d 781 (11th Cir.1985).

The ALJ determined that the record more accurately reflected that Plaintiff lacked the residual functional capacity to lift and carry more than ten pounds, or more than ten pounds on a regular basis, but has no significant non-exertional limitations which narrow the range of work she can perform. (Tr. 17). The ALJ discredited the treating physicians' opinions that Plaintiff had chronic fatigue, muscle joint aches and pains, achiness in neck, elbows, hips, legs and sleep disturbance. (Tr. 263, 265). The ALJ was not, however,

free to substitute his own opinion for that of the physicians. *See Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982); *see also Marbury v. Sullivan,* 957 F.2d 837, 840–41 (11th Cir.1992)(Johnson, J., concurring).

■ Upon consideration, the Court finds the ALJ erred by failing to properly evaluate the combination of plaintiff's non exertional and severe impairments; that plaintiff's residual functional capacity to perform the physical requirements of sedentary work is not supported by the medical evidence and a reversal is warranted.

### 2. The ALJ Rejected The Opinions of Plaintiff's Treating Physicians Without Giving Sufficient Cause

Plaintiff contends that the ALJ erred by failing to give proper weight to the opinion of plaintiff's treating physician, Dr. George W. Ferguson. Dr. Ferguson treated the plaintiff for several years under a diagnosis of chronic fatigue, because of the elevated Epstein–Barr titer, until December 12, 1997, when he referred the plaintiff to Dr. John H. Gridley, Jr., M.D., a specialist in rheumatology. (Tr. 249).

On February 17, 1999, Dr. Gridley gave a deposition supporting plaintiff's claim that she was no longer able to work; and, was entitled to an increase in alimony as part of the aid and support agreement. (Tr. 195–230). In that testimony Dr. Gridley noted that even though the elevated Epstein–Barr titer indicated a diagnosis of chronic fatigue syndrome of CFS (Tr. 205), based on plaintiff's clinical examination, plaintiff had 8 of 13 "tender points", consistent with his diagnosis of fibromyalgia. (Tr. 206–210).

■ When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir.1985); *see also* 20 C.F.R. § 404.1527(d)(2). Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor v. Bowen,* 786 F.2d 1050, 1050 (11th Cir.1986). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. *Id., Schnorr v. Bowen,* 816 F.2d, 578, 582 (11th Cir.1987). Additionally, good cause may be found where the doctor's opinions are conclusory or internally inconsistent. *Jones v. Dep't of HHS,* 941 F.2d 1529, 1532 (11thCir.1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991). Importantly, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *Lewis,* 125 F.3d at 1440 (citing *MacGregor,* 786 F.2d at 1053).

In determining the plaintiff's RFC, the ALJ accorded significant weight to the non-examining state agency physician who opined that plaintiff could perform the full range of sedentary work. Further, he determined that plaintiff's subjective complaints were not fully credible, and he reasoned that there were discrepancies between her assertions and information contained in the documentary reports.

 The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. *Spencer on Behalf of Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988) ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.") Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. *Johns v. Bowen*, 821 F.2d 551 (11th Cir.1987).

At the outset, the court notes that fibromyalgia is unique and because of the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work. The Eleventh Circuit has observed:

'[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.' *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996). Thus, a treating physician's determination that a patient is disabled due to fibromyalgia is even more valuable because there are no objective signs of severity and the physician must interpret the data for the reader.

*Stewart v. Apfel*, No. 99–6132, 2000 U.S.App. LEXIS 33214, at *8–9 (11th Cir. Dec. 20, 2000) (citation omitted).

Here, plaintiff's diagnosis of fibromyalgia is undisputed. The ALJ himself found that the medical evidence establishes that the plaintiff has fibrositis (fibromyalgia), an impairment which is severe. (Tr. 19).

Thus, by definition, plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

 Rheumatologists may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder. *See Stewart*, 2000 U.S App. LEXIS 33214, at *8 (citation omitted); *see also Burroughs v. Massanari*, 156 F.Supp.2d 1350, 1367 (N.D. Ga.2001) (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F.R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight). Further, the regulations provide:

[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.11527(d)(2). As such, Dr. Ferguson's (and Dr. Gridley's) opinions are especially important. Upon consideration, the Court finds the ALJ erred by failing to properly evaluate the treating physicians opinions and a reversal is warranted.

3. **The ALJ's Finding That Plaintiff Is Not Disabled Because She Can Return To Her Past Relevant Work As A Receptionist Did Not Apply The Correct Legal Standard And Is Not Supported By Substantial Evidence**

A review of the step 4 finding shows that the ALJ found plaintiff not disabled

because she had the capacity to return to her past relevant work as a receptionist. (Tr. 20). The Work History Report states that plaintiff worked as a receptionist 1½ days a week, 8 hours one day and 4 hours the other day, at a clerical job in a dentist's office from 1986 to 1988. Since the ALJ described the job as "the type of work she performed in the past" (Tr. 19), he considered the work demands of the job as it is generally performed in the national economy and not as the plaintiff described it.

Upon consideration, the Court finds the ALJ erred by failing to follow the correct procedure for determining if a claimant is able to return to her past work as is set forth in SSR 82–62 and a reversal is warranted.

### III. CONCLUSION

Remand to the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that Plaintiff was disabled. *See Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993); *accord, Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir.1988); *Bowen v. Heckler,* 748 F.2d 629, 631, 636—37 (11th Cir.1984).

For the foregoing reasons, the ALJ's decision is not consistent with the requirements of law and not supported by substantial evidence. Therefore, the decision of the Commissioner is **REVERSED and REMANDED for an AWARD OF BENEFITS** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.